IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHARON R. YOAKUM,                    )
                                     )
                Plaintiff,           )
                                     )   CIVIL ACTION
v.                                   )
                                     )   No. 06-2159-KHV-JTR
                                     )
MICHAEL J. ASTRUE,[1]                )
Commissioner of Social Security,     )
                                     )
                Defendant.           )
_____)

REPORT AND RECOMMENDATION

Plaintiff seeks review of a final decision of the
Commissioner of Social Security (hereinafter Commissioner)
denying disability insurance benefits (DIB) and supplemental
security income (SSI) under sections 216(i), 223, 1602 and
1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i),
423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act).  The matter
has been referred to this court for a report and recommendation.
The court recommends the Commissioner's decision be REVERSED and

_____

[1]On Feb. 12, 2007, Michael J. Astrue was sworn in as
Commissioner of Social Security.  In accordance with Rule
25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is
substituted for Commissioner Jo Anne B. Barnhart as the
defendant.  In accordance with the last sentence of 42 U.S.C.
§ 405(g), no further action is necessary.

the case be REMANDED for proceedings consistent with this
opinion.

**I.    Background**

Plaintiff's applications for DIB and SSI were denied
initially and upon reconsideration.  (R. 15, 21, 22).[2]  Plaintiff
requested a hearing before an Administrative Law Judge (ALJ)
which was held on Sept. 20, 2005.  (R. 15, 37-38).  Plaintiff was
represented by an attorney at the hearing, and testimony was
taken from plaintiff, a medical expert, and a vocational expert.
(R. 15, 375-407).  On Oct. 5, 2005, the ALJ issued a decision in
which he found that plaintiff is able to perform her past
relevant work as a bakery packer, and other significant work
existing in the economy.  (R. 15-20).  He determined that
plaintiff is not disabled within the meaning of the Act, and
denied her applications.  (R. 19, 20).

Specifically, the ALJ found that plaintiff has a severe
impairment of degenerative joint disease of the lumbar spine,
status-post L4-5 laminectomy, but that she has no impairment
which meets or equals the severity of an impairment listed in the
Listing of Impairments.  (R. 17).  He summarized the medical
evidence, plaintiff's testimony, and plaintiff's allegations of

---

[2]Although the ALJ's decision, plaintiff's brief, and the
Commissioner's brief indicate plaintiff applied for both DIB and
SSI, the record contains no copy of an SSI application, denial of
such an application, or other documentation regarding SSI.  This
issue may be clarified on remand if necessary or appropriate.

symptoms, and stated that he had "considered any medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairment and resulting limitations." (R. 17-19). He stated the RFC he assessed for plaintiff--that plaintiff "has the capacity for sedentary work, including lifting up to ten pounds, so long as she has the option to alternate sitting and standing positions at reasonable intervals." (R. 19). Finally, the ALJ stated his step four and step five analyses:

> To assess the impact of claimant's residual functional capacity on her capacity for past relevant work, the undersigned asked the vocational expert a hypothetical question approximating claimant's history, situation and level of functioning as closely as possible, including the restrictions and limitations set forth above. The vocational expert testified that based upon claimant's residual functional capacity, claimant could return to her past relevant work as a bakery packer as well as other significant work including sedentary sit/stand jobs such as information clerk and electronics assembler.

(R. 19).

Plaintiff disagreed with the decision and sought review by the Appeals Council. (R. 10-11). The Council denied review, leaving the ALJ's decision as the final decision of the Commissioner. (R. 7-9); Threet v. Barnhart, 353 F.3d 1185, 1187 (10th Cir. 2003). Plaintiff now seeks judicial review.

**II. Legal Standard**

The court's review is guided by the Act. 42 U.S.C. §§ 405(g), 1383(c)(3). Section 405(g) provides, "The findings of

-3-

the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, it is such evidence as a reasonable mind might accept to support the conclusion. Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency." White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Serv., 933 F.2d 799, 800 (10th Cir. 1991)). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d); see also, Barnhart v. Walton, 535 U.S. 212, 217-22 (2002)(both impairment and inability to work must last twelve months). The claimant's

impairments must be of such severity that she is not only unable
to perform her past relevant work, but cannot, considering her
age, education, and work experience, engage in any other
substantial gainful work existing in the national economy.  Id.;
20 C.F.R. §§ 404.1520, 416.920 (2005).

The Commissioner has established a five-step sequential
process to evaluate whether a claimant is disabled.  20 C.F.R.
§§ 404.1520, 416.920; Allen v. Barnhart, 357 F.3d 1140, 1142
(10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can
be made at any of the steps that a claimant is or is not
disabled, evaluation under a subsequent step is not necessary."
Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines
whether claimant has engaged in substantial gainful activity
since the alleged onset, whether she has severe impairments, and
whether the severity of her impairments meets or equals the
Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).
Id. at 750-51.  If plaintiff's impairment does not meet or equal
a listed impairment, the Commissioner assesses claimant's RFC.
20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at
both step four and step five of the process.  Id.

After assessing claimant's RFC, the Commissioner evaluates
steps four and five, whether the claimant can perform her past
relevant work, and whether she is able to perform other work in

-5-

the national economy.  <u>Williams</u>, 844 F.2d at 751.  In steps one
through four the burden is on claimant to prove a disability that
prevents performance of past relevant work.  <u>Dikeman v. Halter</u>,
245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751
n.2.  At step five, the burden shifts to the Commissioner to show
other jobs in the national economy within plaintiff's capacity.
<u>Id.</u>; <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ:  (1) erred in failing to find
plaintiff's mental impairments severe, (2) failed to specify the
weight assigned to the medical opinions of record, and ignored a
portion of the medical expert's testimony which is favorable to
plaintiff's position, (3) improperly assessed plaintiff's RFC,
(4) erred in making his step four determination regarding
plaintiff's past relevant work, and (5) propounded hypothetical
questions which do not represent plaintiff's actual limitations.
The Commissioner argues that the ALJ applied the correct legal
standard and that substantial evidence in the record as a whole
supports the decision reached.  The court will address the issues
raised in the order in which they would be presented in applying
the sequential evaluation process.

**III. Step Two Evaluation of Mental Impairments**

> **A.    <u>Standard for Evaluating Step Two</u>**

An impairment is not considered severe if it does not
significantly limit plaintiff's ability to do basic work

activities such as walking, standing, sitting, carrying,
understanding simple instructions, responding appropriately to
usual work situations, and dealing with changes in a routine work
setting.  20 C.F.R. §§ 404.1521, 416.921.  The Tenth Circuit has
interpreted the regulations and determined that to establish a
"severe" impairment at step two of the sequential evaluation
process, plaintiff must make only a "de minimis" showing.  Hinkle
v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  Plaintiff need
only show that an impairment would have more than a minimal
effect on her ability to do basic work activities.  Williams, 844
F.2d at 751.  However, she must show more than the mere presence
of a condition or ailment.  Id. (citing Bowen v. Yuckert, 482
U.S. 137, 153 (1987)).  If an impairment's medical severity is so
slight that it could not interfere with or have a serious impact
on plaintiff's ability to do basic work activities, it could not
prevent plaintiff from engaging in substantial work activity and
will not be considered severe.  Hinkle, 132 F.3d at 1352.

The Commissioner has promulgated a Psychiatric Review
Technique for evaluating mental impairments in a disability case.
20 C.F.R. §§ 404.1520a, 416.920a.  In evaluating the severity of
mental impairments, the technique provides for rating the degree
of functional limitation in each of four functional areas:
activities of daily living; social functioning; concentration,
persistence, or pace; and episodes of decompensation.  Id.

-7-

§§ 404.1520a(c) 416.920a(c).  After rating the degree of limitation in each functional area, the Commissioner determines the severity of plaintiff's mental impairments.  <u>Id.</u> §§ 404.1520a(d), 416.920a(d).

When the first three functional areas are rated as "none" or "mild," and the fourth area is rated as "none," the agency will conclude at step two of the sequential evaluation process that plaintiff's mental impairments are not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [claimant's] ability to do basic work activities." <u>Id.</u> §§ 404.1520a(d)(1), 416.920a(d)(1).

**B.** **Arguments**

Plaintiff claims the ALJ determined plaintiff's mental impairments are not severe despite compelling medical evidence that plaintiff has depression, generalized anxiety disorder, and problems with cognitive and other forms of functioning.  The Commissioner argues that the ALJ was correct to find plaintiff's mental impairments not severe because plaintiff did not allege any mental impairments when she filed for benefits, plaintiff pursued no ongoing treatment for mental impairments, and the ALJ found there is no evidence of thought disorder or serious impairment.  The ALJ made no mention of mental impairments when discussing his analysis at step two and step three of the sequential process.  (R. 16-17).  He did, however, discuss

-8-

plaintiff's mental impairments when making his credibility
analysis:

> There is also evidence of depression but mental status
> examinations have observed no evidence of a thought
> disorder or serious impairment and there is little
> evidence of ongoing counseling or medication.  In an
> October 2004 examination, a psychologist, Dr. L.
> Kaplanski, noted some loss of cognitive and other
> functioning due to depression, but the evidence
> indicates that claimant has not sought treatment and
> does not even take anti-depressive medication, which
> one would expect if claimant were truly impaired due to
> depression; therefore, the undersigned cannot find that
> claimant is significantly limited due to depression.

(R. 18).  There is no other discussion regarding a mental
impairment in the decision.

### C.    **Analysis**

Perhaps the ALJ intended the discussion quoted above to be
his evaluation of whether plaintiff's mental impairments are
severe.  However, there is no hint of the relevant legal
standard--whether the impairment has more than a minimal effect
on plaintiff's ability to perform basic mental work activities
such as understanding simple instructions, responding
appropriately to usual work situations, and dealing with changes
in a routine work setting.  The ALJ determined that plaintiff is
not "significantly limited" due to depression, but that is not
the relevant standard, and the court has no basis to relate "not
significantly limited" to "more than a minimal effect on the
ability to perform basic work activities."

Moreover, the decision does not apply the psychiatric review technique for evaluating mental impairments.  There is no mention of the four mental functional areas, nor of the degree of limitation found in each area.  Finally, the decision does not state whether the evidence might otherwise indicate that there is more than a minimal limitation in plaintiff's ability to do basic work activities.  The court may not re-weigh the evidence and apply the psychiatric review technique in the first instance. Therefore, remand is necessary to allow the Commissioner to apply the psychiatric review technique to evaluate plaintiff's mental impairments.

The court would caution the Commissioner that the psychiatric review technique does not apply only at step two of the sequential process.  If in applying the technique at step two the mental impairments are found severe, the technique requires an evaluation of whether the impairment(s) meets or equals a listed impairment, by comparing the step two findings and the medical evidence with the criteria of the listings.  Id. §§ 404.1520a(d)(2), 416.920a(d)(2).  If the Commissioner determines that plaintiff's mental impairments do not meet or equal a listing, he will then assess plaintiff's RFC.  Id. §§ 404.1520a(d)(3), 416.920a(d)(3).

In determining RFC, the regulations provide that the Commissioner will consider plaintiff's "ability to meet certain

-10-

demands of jobs, such as physical demands, mental demands, sensory requirements, and other functions." Id. §§ 404.1545(a), 416.945(a). The regulations provide that "[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [plaintiff's] ability to do [work.]" Id. §§ 404.1545(c), 416.945(c).

The Commissioner has clarified the difference between evaluating the severity of mental limitations at steps two and three based upon the functional areas identified in the psychiatric review technique and evaluating the ability to meet mental demands of jobs at steps four and five. Soc. Sec. Ruling (SSR) 96-8p, West's Soc. Sec. Reporting Serv., Rulings 147 (Supp. 2006). "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in" the four functional areas. Id. RFC must be expressed in terms of work related function. Id. at 148. "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work

setting." Id. at 149.   Therefore, an ALJ should not state a mental RFC in terms of the four functional areas, but should make a function-by-function assessment of each of the work-related mental activities relevant to the case at hand.

## IV.  Evaluation of Medical Opinions

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, will be evaluated by the Commissioner in accordance with factors contained in the regulations.  Id. §§ 404.1527(d), 416.927(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2006).

The regulations define three types of "acceptable medical sources," including "treating sources," "nontreating sources" who have examined the claimant, and "nonexamining sources."  20 C.F.R. §§ 404.1502, 416.902.  A physician who has treated a patient frequently over an extended period of time is expected to have greater insight into the patient's medical condition.  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  "If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's]

-12-

impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2006).

If a treating source opinion is not given controlling weight, all medical opinions will be weighed in accordance with the regulatory factors:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); see also Goatcher v. Dep't of Health & Human Serv., 52 F.3d 288, 290 (10th Cir. 1995).   In general, the opinions of treating sources will be given the greatest weight, those of nontreating sources will be given lesser weight, and those of nonexamining sources will be given the least weight. Doyal, 331 F.3d at 762; Robinson v. Barnhart, 366 F.3d 1078, 1084

(10th Cir. 2004); <u>Talbot v. Heckler</u>, 814 F.2d 1456, 1463 (10th
Cir. 1987) (citing <u>Broadbent v. Harris</u>, 698 F.2d 407, 412 (10th
Cir. 1983), <u>Whitney v. Schweiker</u>, 695 F.2d 784, 789 (7th Cir.
1982), and <u>Wier ex rel. Wier v. Heckler</u>, 734 F.2d 955, 963 (3d
Cir. 1984)).  SSR 96-8p includes specific narrative discussion
requirements for an RFC assessment.  West's Soc. Sec. Reporting
Serv., Rulings 149 (2006).  The narrative discussion is to cite
specific medical facts to describe how the evidence supports each
RFC conclusion.  <u>Id.</u>  It must include an explanation how any
ambiguities and material inconsistencies in the evidence were
considered and resolved.  <u>Id.</u>  Where the ALJ's RFC determination
conflicts with a medical source opinion, the ALJ must explain why
he did not adopt the medical source opinion.  <u>Id.</u> at 150.

### A.   Arguments

Here, plaintiff claims the ALJ failed to assign weight to
the medical opinions in the record and ignored Dr. Brahms's
opinion that it would be necessary for plaintiff to lie down to
cope with pain.  The Commissioner argues that Dr. Brahms
testified plaintiff <u>might</u> need to lie down, but that he also
testified that plaintiff's condition is nondisabling.  Moreover,
the Commissioner argues, the ALJ found plaintiff's allegations
not credible.  Therefore, the Commissioner implies, it was proper
not to consider or discuss Dr. Brahms's opinion the plaintiff
might need to lie down to cope with pain.

**B.**   **Discussion**

Plaintiff claims Dr. Brahms unequivocally stated that plaintiff would need to lie down during a workday to cope with pain.  The physician's testimony was not so certain as plaintiff states.  At the hearing below, plaintiff's counsel asked a question of Dr. Brahms.

> Q   Okay.  And then the final question is the -- would the pain that you would expect somebody to have with the findings that you have before you of Mrs. Yoakum -- in Mrs. Yoakum's file, would there be -- would it be reasonable that such a person might need to lie down to cope with pain levels?
>
> A   She has evidence of a chronic low back problem, and there's no question in my mind that it <u>might</u> be necessary for her to do so, yeah.

(R. 394)(emphasis added).  As emphasized above, the physician stated it <u>might</u> be necessary for plaintiff to lie down to cope with pain.  As the Commissioner argues, Dr. Brahms also testified that plaintiff was limited to sedentary work and that she is not disabled.  (R. 392).

The ALJ mentioned Dr. Brahms's opinion that plaintiff could do sedentary work if she had the option to alternate sitting and standing.  (R. 18-19).  He did not, however, even comment on the physician's testimony that plaintiff might have to lie down to cope with pain.  In light of the vocational expert's testimony that plaintiff would be unemployable if she had to lie down and rest during the course of the day to cope with pain, the physician's testimony creates an ambiguity whether plaintiff

-15-

would be able to work if, in fact, she must lie down to cope with pain. The ALJ did not address this ambiguity. From the discussion in the decision it is not clear whether he was even aware of the ambiguity. The court may not weigh the evidence and resolve the ambiguity in the first instance. Therefore, remand is necessary for the Commissioner to properly evaluate Dr. Brahms's opinion.

Plaintiff also claims the ALJ failed to assign weight to the medical opinions of record. The Commissioner did not address this allegation in her brief, but the court agrees with plaintiff's claim. As plaintiff argues, Drs. Reintjes and Zimmerman provided opinions regarding plaintiff's ability to sit and stand. (Pl. Br. 17); see also, (R. 263, 362). The ALJ recognized these opinions and other medical opinions relating to plaintiff's limitations which were stated by Drs. Khanna, Kaplanski, and Brahms. (R. 18-19). As plaintiff's brief implies, the ALJ did not assign controlling weight to a treating source opinion. Nevertheless, he did not state the weight given to any of the medical source opinions as required in such a case. The ALJ did not cite specific medical facts to describe how the evidence supports his RFC conclusion. He did not include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved, particularly regarding plaintiff's weight-lifting capacity or capacity for sitting and

standing.  The ALJ's RFC determination conflicts with medical source opinions in this regard, but he did not explain why he did not adopt the medical source opinions or how he arrived at the limitations included in his RFC assessment.  Therefore, remand is necessary for the Commissioner to properly evaluate the medical opinions and properly explain how they figured into his RFC assessment.

Because the ALJ erred in applying the incorrect legal standard to evaluate the severity of plaintiff's mental impairments at step two, and erred in evaluating the medical source opinions, it is possible a proper determination in these two respects will result in a change in the assessment of plaintiff's RFC.  Therefore, it would be premature for the court to comment further on the Commissioner's assessment of plaintiff's RFC or on the determination to be made at step four or step five of the sequential evaluation process.

The court will mention, however, the correct legal standard to be applied at step four of the sequential process.  At step four the ALJ is required to make specific findings in three phases.  Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 82-62, 1975-1982 West's Soc. Sec. Reporting Serv., Rulings 809, 813 (1983).  In phase one, "the ALJ should first assess the nature and extent of [the claimant's] physical limitations;" Winfrey, 92 F.3d at 1023; in phase two, he must "make findings

-17-

regarding the physical and mental demands of the claimant's past relevant work;" id. at 1024; and, in phase three, he must determine "whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." Id. at 1023. These findings are to be made on the record by the ALJ. Id. at 1025; see also, SSR 82-62, 1975-1982 West's Soc. Sec. Reporting Serv., Rulings, at 813 ("decision must contain . . . specific findings of fact" regarding each of the three phases).

The Tenth Circuit has explained that an ALJ may properly rely upon vocational expert (VE) testimony in making his findings at phase two and phase three. Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003). The ALJ may not delegate the step-four analysis to the VE. He may, however, rely on information supplied by the VE regarding the demands of plaintiff's past relevant work and whether a person with plaintiff's RFC could meet those demands, and he may accept the VE's opinions. Doyal, 331 F.3d at 761. The critical distinction is whether the ALJ relied upon the VE testimony in making the findings or whether the ALJ delegated the phase two and phase three findings to the VE. Id. 331 F.3d at 761. Where the ALJ makes the phase two and phase three findings and quotes the VE testimony approvingly in support of those findings, he has properly relied upon the VE

testimony.  <u>Id.</u>  On remand, the Commissioner must ensure a proper step four analysis is made.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED and that JUDGMENT be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case to the Commissioner for further proceedings in accordance with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  <u>Hill v. SmithKline Beecham Corp.</u>, 393 F.3d 1111, 1114 (10th Cir. 2004).

Dated this <u>15th</u> day of February 2007, at Wichita, Kansas.


                              s/John Thomas Reid
                              **JOHN THOMAS REID**
                              **United States Magistrate Judge**


-19-